The next case for argument this morning is 2011-1531, Shell Oil v. United States. Shell Oil v. United States Shell Oil v. United States Good morning, and may it please the Court. Shell timely filed a claim for drawback of customs duties within the three-year period of limitations under 19 U.S.C. 13-13R. While that claim itself did not reference HMT or ET, Harbor Maintenance Tax or Environmental Tax, Shell asserted its entitlement to HMT and ET in its protest of that claim. Customs denied the protest and Shell then docketed a case in the CIT. All of these interactions with customs took place during the congressionally extended statute of limitations on drawback claims, the quote-unquote 1999 window, as we refer to it in the briefs. In fact, the parties agreed that if Shell had taken all of this information it had already given to customs prior to that point, the closing of that 1999 window, put it on the same one-page form they'd already filed, and refiled it, even though it would have been immediately denied because it was claiming HMT and ET, we would not be here today. So the question the Court has to resolve is whether Shell had to refile that form. The Court's decisions in Warren and Ektra… The six-month period is pretty clear in what they're giving you, isn't it? Well, Your Honor, I would argue that the statute itself is pretty clear that you have to file a claim. What we're arguing is basically the six-month period says that you have to file a claim. And I think my colleague is going to argue that you have to file that claim in order to trigger this extended limitations period. That's the clearest I can put it. But 1313R itself, the underlying statute of limitations itself, also requires a claim to be filed. And in Warren, this Court said, it doesn't matter that the claim didn't raise HMT and ET, as long as within the period of limitations, HMT and ET were raised. That was sufficient. So again, in Warren… Was the burden on the CIT and Customs to go back through and determine what was within that six-month window, their recent cases? Your Honor, I don't think that there's really a burden argument here. We're not asking – if we're asking Customs to do anything, we're not asking them to look very far. This case was docketed in the CIT. I mean, it's not a situation in which there was a claim filed, there was failure to prosecute the claim, it was denied, and no case was filed. We're not talking about that. I'm unclear on Warren. On Warren, the Court said you didn't have to refile because it had filed a protest with Customs within the three-year period. That's not what happened here. That is not what happened here, Your Honor. That's correct. So I guess I'm not clear on where your reliance on Warren gets you. Our reliance on Warren is – there's a defined process with respect to these claims. There's a claim that has to be filed, then that claim is denied in certain circumstances. Then there's a protest that has to be filed, and that protest might be denied. Then the case is docketed in the CIT. What Warren stands for is you didn't put the language in the claim. You didn't claim HMT, ET in your actual claim. But Customs had knowledge of it within the period of limitations. This is what makes it different than ECTRA. In ECTRA, Customs did not have knowledge of HMT and ET with respect to that specific claim within the period of limitations. What we're saying is here you've got this 1999 extended window, which the court in ECTRA specifically distinguished from the 2004 window and said it is a suspension of the statute of limitations. Within that period of time, Customs had all of the information it needed. It had it in the form of a claim that didn't have HMT and ET on it, but a protest that did. In that sense, it's the same as Warren. And so that's our position is that as long as within the extended period of limitations, Customs has the information, then the HMT and ET should be allowed. So the six months doesn't really matter? Well, the six months does matter, Your Honor, because at the end of that six-month period, if Customs didn't have that information, that's Warren. In the situation of Warren, Customs sitting looking at – sorry, that's ECTRA. In the situation of ECTRA – But the language of the statute says six months, and then it looks backwards as to certain cases, right? That's correct, Your Honor. Okay. Then it's not leaving it open for everything that existed prior to that, is it? I guess the way I view it is it says that you have to do something within six months. But 1313R also says you have to do something within six months. That something is filing a claim. In Warren, the claim was not filed within three years. A claim alleging HMT and ET, it was not filed within three years. A protest was filed, and that's the same situation as ours. No, your protest wasn't filed within three years. It wasn't filed within three years. It was filed within the extended limitations period that the 1999 Trade Act created. According to ECTRA, the 1999 Trade Act worked an extension of that three-year period. For claims filed in that six-month period. That's correct. But the 1313R itself only allows a three-year period for claims filed within that period. It's the same argument. Is a claim enough to trigger that period of limitations? In Warren, they said that you have to have – just having a protest that has the HMT and ET on it and having a claim is good enough. And that's what we're arguing here. And that's the distinction with ECTRA. Tell me – I'm sorry. Tell me I'm not getting the distinction with ECTRA. I'm really not getting what you're saying. Absolutely, Aaron. In ECTRA, you have a protest file that doesn't say anything about HMT and ET. I'm sorry, a claim file that says nothing about HMT or ET. Like your case. Like our case. But the 1999 window comes and goes. Then, after that, ECTRA raises HMT and ET with customs. So during the 1999 extended window, which is the way ECTRA puts it – I mean, ECTRA analyzes the difference between a different statute of limitations provision that the claimant in ECTRA was trying to use and the 99 Trade Act that says if Congress wants to extend the period of limitations, it knows how to do it. And it did it in the 99 Trade Act. We're before that. ECTRA is after that. Customs knew before that period elapsed that we were claiming HMT and ET. In ECTRA, that's exactly the opposite. So in the situation of ECTRA, there was no claim, no piece of paper. Well, you seem to be equating – you say customs knew, and that's what distinguishes us from ECTRA, and then you're talking about a claim. There was no claim here, right? I mean, you're hinging this on the fact that, in your case, customs knew before 99, and in ECTRA, they didn't? There was the same kind of claim there was in Warren. Can you answer my question? No, Your Honor. I believe that, if I got your question right, what we're saying is in Warren, there was no claim that had HMT or ET either. There was a protest that had HMT and ET. Well, Warren dealt with jurisdiction. Warren dealt with the futility arguments, and ECTRA made clear that – which is close to our case, I think, in terms of the kinds of issues we're looking at, right? It is, absolutely, Your Honor. We think that the language in ECTRA sort of was priest in the sense of thinking about this case. Okay, so why don't you show me in ECTRA what you think is so important. Absolutely. So on page 1374 – well, I guess let me start a little bit before that. On page 1370, the court in ECTRA characterizes – again, this is in the context of the 04 period limitations, which is not really an issue here in 99. So they characterize the 99 Trade Act as follows. They say that Section 2420E of the 99 Trade Act applied the amendments retroactively and expressly suspended the three-year limit imposed by 19 U.S.C. 1313R, creating a six-month grace period in which otherwise timely claims could be filed or refiled to obtain relief under the amended statute. Okay. Then, if you move forward – In your case, you didn't file a claim within the six-month period. We did not refile. Well, this sentence says, creating a six-month grace period in which otherwise untimely claims could be filed or refiled. And we did not do that. You did not do either. That's correct. So then if you go forward to 1374, this is where ECTRA is talking about Warren, and it says that Warren rested on jurisdictional grounds inapplicable here. It says that Warren, the opinion in that case, does not suggest that a party may be excused from failure to comply with the statute of limitations of arrogance and futility. That's not what we're arguing. Then it talks about what Warren at most meant. And it says, in that circumstance, at most we held that under such circumstances, those circumstances meaning the 1999 extension, the filing of a new claim in the extended limitations period was unnecessary since customs already had notice of the claim. In Warren, again, the claim didn't have HMT and ET in it. Unless the court is going to look at that and say, well, basically what Warren did is deemed the protest to be a claim, the protest there didn't have anything in it. And our protest didn't have anything in it. But both of us, prior to the expiration of the period of limitations in our case extended, in Warren's original, customs had that information in the form of a protest. But your case is not similar to Warren because Warren did not have to refile because it had filed a protest within the initial three-year period, which is something you didn't do. Well, that's what the court found in Warren, Your Honor, absolutely. Prior to that, the government was arguing that they did have to refile because, as I said before, there's a defined administrative process here. Claim, if it gets denied, then protest. If it gets denied, then CIT. So their claim is the same as our claim. It doesn't say anything. Yes, their protest was filed within the three-year window. Our protest was filed within the extended window. What extended? Your protest wasn't filed within the extended window. Your protest was filed before the extended window opened, and you didn't file or refile during the extended window. Your Honor, that's certainly one way to view that language. You're mixing filed and existed, are you not? Your Honor, I think that the… Or raised. Your Honor? Or raised. Or raised, yes. I think that certainly is an argument that we would lose under. If you found that the six-month window, something actually had to be refiled within that six-month window, and the fact that Customs knew about it, the fact that it was extant, and the fact that the window actually extended the period of limitations to the extent that you refiled, we would lose under that circumstance, unless you find that the 1995 break was different, which is sort of our second argument. But I think that if you look at what Warren said, again, unless you're going to read that Warren language as saying, well, basically what they said was a protest operated as a claim, unless you're going to say that, their claim is the same as ours. So let me get real quick to the second argument, and the second argument is basically, I think it's important to understand the context of this. We're all sitting here looking at it with 20-20 hindsight, the situation. At the time, if Shell or any other claimant had refiled their claim, it would have been instantly denied. It wouldn't have given Customs any more information. Are you saying refiled or filed for the first time in 1999? Are you talking about the 1999 window? Absolutely, Your Honor. During that 1999 window, there was nothing, no amount of filing or refiling, that Shell or anyone else could have done to get the claim granted. I think the phrasing the court used was highly controversial at the time. It was highly controversial at the time, Your Honor. And so for us to look back at that and say, well, Customs, you needed to go through this very formalistic step of refunding the piece of paper, even when you had an active case, adopting a case on the CIT, seems to us to be problematic. Now in ECTRA, the way they resolved that, this court resolved that, they said, well, the regulations at the time required you to have a correct calculation. And so to the extent that HMT is a duty, you should have put at least the number on the claim form, the additional amount of HMT on the claim form. In our circumstance, those regulations were not in existence and everybody agrees with that. The regulations that were in existence in 1995 did require a calculation, but they specifically allowed for that calculation to be adjusted during the administrative process. So to say that the regulations required a correct calculation in ECTRA, that's fine. In our circumstance, it was a different regulation at issue in that circumstance. And I think looking at how confusing this was and a claimant trying to derive how to protect their rights in a circumstance in which they're not getting any guidance from Customs and not very much guidance from the courts and no guidance from Congress until eventually 2004 is putting a little bit too much on the claim. Good morning, Your Honors. May it please the Court. By statute, drawback claims must be filed within three years or be considered abandoned. And there's no dispute that Shell did not make an explicit claim for harbor maintenance tax or environmental tax within the three years of export. Let me just first address the 1999 Trade Act. The 1999 Trade Act, the language of which is found on page 11 of the Shell's brief, requires that basically suspends the three-year time period for any drawback claim filed within six months after the date of enactment of this Act. So it required an affirmative action on the part of the importer. It did not put the onus on Customs to scour every potential claim and revive otherwise stale claims. What it did was provide a grace period for importers to put those claims back before Customs. What that time period made available to Shell was an opportunity to revive what was already an untimely claim. So at the time the 1999 Trade Act... It seems strange to say they had to refile something that was already pending. Clearly, Congress intended to extend the ability for people, for six months after this Act, to reopen untimely claims. Well, theirs was already open before the Court. Well, Congress certainly knows how to craft that. When it wants to do retroactive actions, it can craft the language in a way to say That's not what Congress said. Congress said, importers, you have the opportunity to bring these claims back to Customs within the next six months, or bring them for the first time within six months, and Customs will consider them. I think we're focusing a lot on the 1999 Trade Act, but I think it may be even more important to go back to the point that nowhere in the first three years following export did Shell do anything to put Customs on notice that it was seeking drawback of HMT and ET. So at the time that that three years expired, those claims were considered abandoned. The 1999 Trade Act was, if anything, a bonus to Shell to revise those claims because they were already untimely at that time. And George Warren... We'll go back to what the language of George Warren was. The government at that time was contending that raising a claim for HMT and ET at the time of protest was insufficient for jurisdictional purposes to give the Court of International Trade 1581A jurisdiction. That's not the case that we're making here. We're not disputing that there's any issue in jurisdiction. But George Warren did not address the issue of the timeliness of those claims of HMT and ET. And as it turns out, there was no need to because the protests which raised the claims of HMT and ET for the first time were within those three years. Is a protest the same thing as a claim? A protest is not the same thing as a claim, but if a claim was made at the time of protest, Customs would consider it to be timely. So that if at the time of protest the importer said, you should have given me HMT and ET and this is how much you should give us back, Customs would have treated that as a timely claim if it was filed within the three years. And in fact, in this case, Customs has settled with or stipulated to judgment the entries that were filed at the time of protest but were within the three years. So the protest is not the same thing as a claim, but the claim could have been made at protest. That was what the court recognized in George Warren. So if a protest, when it raises something that looks like a claim, is treated as a claim, right? That's what you're suggesting. It would be an amended claim. Right, an amended claim. So if that's the case, they then protested outside the three-year window, but the 99 Act gets passed, which opens up a new window of time. I noticed that we always talk about filing and refiling. The 99 Act doesn't say that. It just says filing, filed. It doesn't say anything about refiling. So I don't know. Do we really hold against them? They had a claim pending at the exact time when Congress reopened it and said anybody who wants to can bring something, even if it's untimely, during this period. And they had something pending, the exact same thing, during that period. Why doesn't it just get the benefit of the 99 reopened window? Because Congress required importers to take action within that six-month period. They were taking action. It was still pending, right? The case was pending. They weren't sitting back doing nothing. The case was pending, and Shell did not take any action. I think it would be a different question if at some point during that six-month period Shell had brought it to the court's attention or asked to be remanded back to Customs to warn the claim. Well, Warren, I guess I'm in extra. They talk about Warren. They discuss Warren, and they say that we held Warren, and that under such circumstances, the filing of the new claim in the extended limitations period was unnecessary since Customs already had notice of the claim. Did Customs not already have notice of the claim in this case? Right. I guess there's two issues here. One is the issue of notice, and with respect to George Warren, what the court was really discussing was notice for the purposes of having a protest and a decision on a protest such that jurisdiction would lie within the Court of International Trade's 1581A jurisdiction. But notice is a separate but perhaps related concept with the issue of timeliness. The problem Shell has, it still can't get around any action taken within three years of export or any action it took within that six-month period that was a timely claim for HMT and ET brought to Customs. The problem that Shell has, it just simply cannot point to anything that it did to put Customs on notice within the time period, within those two time periods that it was seeking HMT and ET. It can't point to anything it did to put Customs on notice within that six-month window time period. They had an active litigation where they were arguing without question at that point in time that they were entitled to HMT and ET as part of the drawback. So how can you say they did nothing during the six-month window to put Customs on notice? They had a pending litigation that said exactly that. The best I can answer is to go back to the language of the 1999 Trade Act which required that something be filed within six months, not something be pending within six months. So you don't like our language in Warren, which relies on what Customs had notice of and didn't have notice of. You're saying that language in Warren is inconsistent with the statute because the statute required files. I'm suggesting that the language in Warren relates to the issue of jurisdiction, not to the issue of the timeliness of the claim. I think that language is not being disputed for purposes of jurisdiction. I think that language just doesn't relate to the issue that's presented here, which is did Shell make a timely claim for HMT and ET. Going to the point that your friend made at the end of the argument about the form and the regulations were different in 1996 and 1995. In 1998, if the relevant form for filing a drawback claim at the time didn't provide for any information about ET and HMT drawback and the regulations didn't provide any means for filing a protective claim, how should Shell have timely filed a drawback claim? There are any number of things that Shell could have done. I think first if you look at the actual form, first of all, Shell was a recipient of accelerated drawback, the privilege of accelerated drawback, which under the regulation at the time did require it to make a calculation of the drawback it was seeking. But if the court looks at page 147 of the joint appendix, the column 19, there's a column for duty paid, and what Shell did was say, I paid this amount in duty, I'm claiming less 1%, and then the net claim. So Shell made a some certain claim for drawback, which did not include HMT or ET. But let's say that Shell was uncomfortable with putting those two taxes and fees on the form for whatever reason. It could have just included a second sheet of paper saying, also, please let it be known that we are seeking HMT and ET in these amounts. That would have preserved their claim. There certainly was a lot of talk in the importing community about whether these taxes and fees were subject to entitlement to drawback. There was the George Warren litigation. There was the tech support litigation. So a lot of these things were percolating, and certainly Shell was enough on notice to preserve its claim that it made those claims at the time of protest, which suggests that there wasn't any barrier to it filing something with customs at the time it filed its drawback claim in 1995 and 1996. I think I will just say that in 1995 and 1996, the fertile minds of lawyers were papering the files with all kinds of documents that were being created in relation to HMT, to ET, to everything they thought potentially they might be able to get or preserve. Absolutely. It was a live issue that was being very vigorously litigated both before the Court of National Trade and before customs. And so for that reason, I think that the idea that it somehow would have been futile or pointless to preserve their claims in some manner really doesn't get Shell very far. Well, I think their futility argument, as I understand it, is why would we refile? We're already pending. We filed and we're pending. It's not like we filed and the litigation is over. Then certainly there's, you know, you should refile. Customs is not on notice. You continue to dispute this. A window is open. But they're pending. Their argument is what difference would it have made if we had refiled? It would have made their claims timely. I mean, I'm not sure I have a better answer for the Court except that… What do you think the purpose of the 1999 Act was? Well, the purpose of the 1999 Trade Act was really there was some confusion about who was eligible to claim substitute petroleum derivatives drawbacks. And so Congress sort of cleared that up and said, I know there's been a lot of confusion about this issue, so here's a six-month window to refile the claims that they hadn't been made yet. So the purpose of it wasn't directly addressed to the situation that Shell had, which is an untimely claim. But it's certainly an opportunity that Shell could have taken advantage of, even if it wasn't directly for that purpose. You mentioned in your brief that there were related cases. There are 20 cases pending. Are these pending? Are these being held pending the opening of this case? Yes, Your Honor. Many cases stayed pending extra and following the decision in extra, there was this factual distinction about whether the claims were filed prior to the 1998 regulation, whether that might somehow make a difference. So this was selected as a test case for that issue. So there are approximately 20 cases below that are state. Is that the issue? Because I was going to ask you about, I mean, is there any relevance in the government's view to the fact that in extra, they relied on the 1998 regulations for rejecting the notion of an implicit claim, right?  It certainly was a clearer solution to that, or a clearer resolution to that case. But even in the absence of the 1998 regulations, there was still a requirement to make a claim, and there was no requirement for customs to make the claim for Shell or to give them more money than what they had asked for. And particularly with respect to Shell, since it was using the accelerated drawback privilege, it was by regulation required to make a calculation of what it was seeking, and that calculation did not include that. But even aside from that complete calculation requirement, I think there's still the general problem that Shell has is that extra said, you have to do something within three years to protect your claim, to preserve your claim. And certainly if you didn't include that amount in your drawback entry, that makes it clear that you didn't do anything to protect your claim. But here Shell, again, can't point to anything that it did within those three years that preserved its claim, put it on customs notice within those three years that it was seeking drawback. And I think ultimately this court rejected the idea of an implicit claim, and I think that same idea applies even in the absence of the 1998 regulation. For these reasons, we respectfully request that the court affirm the trial court. Three quick points. First of all, with respect to this issue of the regulations, I would point the court to pages 20 and 21 in our opening brief. The regulation for 1998 required the applicant to correctly calculate the amount of drawback due. The 1995 regulation required that the claim include a computation of the amount due, but then it says, after liquidation, the regional commissioner shall certify payment of any amount due or demand a refund of any excess amount paid. So it is not a final calculation. The 1995 regulation, it was not a final calculation. The second point is... But how does that affect this case? It affects this case because my client was operating under that 1995 regulation. Yeah, but some of your... Put note 20 of the lower court's opinion indicates that some of your protests could have been timely filed within the three years. So failure to correctly calculate, it doesn't held against you under the statute, but you can't rely on the idea that, well, we actually always meant HMT and ET and we thought that it would be included and then it wasn't. I mean... I think that... You got your answer for the amount you were going to get back for the drawback prior to the three years for some of the protests. I think that's right. We did get that amount back. I think the question, though, is what did the claim form actually have to say? And if you've got a situation where the relevant statute and regulations provide that HMT is a customs duty for administrative purposes and your calculation doesn't have to be final, it doesn't have to be precise, it doesn't have to be... No, but there's nothing... That argument only matters if you're suggesting that somehow our original claim is filed included HMT and ET and that's why we're not timely, which I don't understand you'd be making that argument. Your Honor, I think that the original claim, the way these claims work in drawback, you select entries that you file a claim for. It's not like a tax refund suit where you have to prove an overpayment in a specific amount where you're supposed to list these entries, and they listed all those entries. Because the form only allowed really for you to provide duty. The form says duty. They put the duty on there, but there's no indication that at that point in time and then thereafter there wasn't an intent to claim HMT or ET. There's no indication that there was. Well, I think, Your Honor, immediately thereafter when that was denied, then they filed a protest. No, not immediately after because if it had been immediately thereafter, some of these claims would have been timely because some of them would have been filed within the three-year window. But you can't file a protest to the nine-year claim, Your Honor. I mean, when the claims were denied, then they timely filed a protest, and that was outside of the three-year window. When some of these claims were denied was still within the three-year window wherein you could have filed a protest and still been timely. That's correct, Your Honor. If they had rushed to get it filed, they would have been able to do that. One other real quick point, I'll drop my last one, is that I think this whole position as far as a claim versus a protest is newly found with respect to my colleague. I mean, Warren itself was argued because the Department of Justice took the position that there's a difference between a protest and a claim. That's the reason why Warren exists on the books. So, yes, today they are taking the position that a protest is good enough for purposes of a claim, but that certainly was not the historic case.  Thank you.